**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Michael Kilpatrick, | No. CV-19-04513-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's application for Title II Disability Insurance Benefits under the Social Security Act ("Act").  Plaintiff filed a Complaint seeking judicial review of the decision (Doc. 1), and the Court now considers Plaintiff's Opening Brief (Doc. 18, "Pl. Br."), the Commissioner's Response (Doc. 21, "Def. Br."), Plaintiff's Reply (Doc. 22, "Reply"), and the Administrative Record (Doc. 14, "R.").  For the following reasons, the Court will affirm the decision.

## I.      BACKGROUND[1]

Plaintiff filed an application for benefits on March 22, 2016, alleging disability as of March 2, 2016.  (R. at 15.)  The application was denied at the initial and reconsideration levels, and a hearing before an administrative law judge ("ALJ") was held at Plaintiff's request on June 26, 2018.  (*Id.* at 69–93.)  At the hearing, the ALJ found it necessary to

---

[1]      The Court has reviewed the entirety of the medical evidence.  In lieu of providing a detailed summary of it here, the Court will reference and incorporate particular evidence as appropriate in its analysis.

obtain updated consultative examinations before eliciting testimony from a vocational expert ("VE") on whether Plaintiff could perform work, given that the consultative examinations in the record at the time were nearly two years old and there were no statements from any treating provider. (*Id.* at 89–92.) Following procurement of new consultative examinations, a supplemental hearing was held on January 17, 2019. (*Id.* at 37–66.) Thereafter, the ALJ issued a written decision finding Plaintiff not disabled. (*Id.* at 15–27.) The Appeals Council denied review and the decision became final and ripe for this Court's review. (*Id.* at 1–3.)

The ALJ found Plaintiff had severe impairments of chronic pain disorders with insomnia and lumbar spondylosis, right wrist arthropathy, labral and rotator cuff repair for the right shoulder, debridement of the left ACL in the left knee, and obesity. (*Id.* at 18.) Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform work at the "medium"[2] exertional level with the following limitations and exceptions:

- [He] can occasionally lift 21-50 pounds, never lift 51-100 pounds, frequently carry 11-20 pounds, occasionally carry 21-50 pounds, and never carry 51-100 pounds.

- [He] can sit, stand, and walk for 4 hours at a time each, sit for a total of 8 hours, stand for a total of 6 hours, and walk for a total of 6 hours in an 8-hour workday. He does not require a cane to ambulate.

- With the dominant right upper extremity, [he] can occasionally reach overhead and push/pull, as well as frequently reach (all other) and handle. There are no limitations with the left upper extremity.

- In addition, he can occasionally climb ladders/scaffolds and frequently climb stairs/ramps, stoop, kneel, crouch, and crawl.

- Further, he can sort, handle, and use paper files.

---

[2]   *See* 20 C.F.R. § 404.1567(c).

(*Id.* at 20.)  Based on this RFC assessment and VE testimony, the ALJ found that Plaintiff was capable of performing past relevant work as a corrections officer and gambling dealer and was therefore not disabled.  (*Id.* at 24–25.)  Additionally, and in the alternative, the ALJ found that Plaintiff was not disabled because, based on his RFC, age, education, and past work experience, he was capable of performing work as a warehouse worker, cashier II, housekeeper cleaner, document preparer, and circuit board assembler.  (*Id.* at 25–26.)

## II.   LEGAL STANDARD

In reviewing a decision of the Commissioner, the Court reviews only issues raised by the party challenging the decision.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) ("[The Court] will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief.").  The Court may set aside the decision only when it is not supported by "substantial evidence" or is based on legal error.  *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).  "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  *Id.* at 674–75; *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled.").  "Yet [the Court] must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  *Trevizo*, 871 F.3d. at 675.  "[The Court] review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely."  *Id.*  "Finally, [the Court] may not reverse an ALJ's decision on account of an error that is harmless."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Such is the case where the error is

"inconsequential to the ultimate nondisability determination" or where the ALJ's "path may reasonably be discerned, even if the [ALJ] explains [his or her] decision with less than ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)).

To determine whether a claimant is disabled under the Act, the ALJ engages in a five-step sequential analysis. 20 C.F.R. § 404.1520(a). The burden of proof is on the claimant for the first four steps but shifts to the Commissioner at the fifth. *Molina*, 674 F.3d at 1110. At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step and determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III.   ANALYSIS

### A.   The ALJ's Step Two Finding Is Supported By Substantial Evidence And Free Of Legal Error.

Plaintiff's first allegation of error is that the ALJ improperly found that he did not have a severe mental impairment at step two. (Pl. Br. at 11–13.) The ALJ had found that because Plaintiff had "no more than mild limitations" in mental functioning, his mental

impairment was not severe.  (R. at 18–19.)  In disputing this conclusion, Plaintiff maintains that the ALJ "overruled" diagnoses from: treating psychiatrist, Dr. Jasbir Bisla, who diagnosed dysthymic disorder; consultative examiner, Dr. Kenneth Littlefield, who diagnosed persistent depressive disorder; and consultative examiner, Dr. Michael Rabara, who diagnosed unspecified depressive disorder.  (Pl. Br. at 12; R. at 535, 680, 985.) Plaintiff further alleges that the ALJ erred by failing to account for mental limitations assessed by Dr. Littlefield, Dr. Rabara, and non-examining State agency psychologists who reviewed his application at the initial and reconsideration levels in the RFC.  (Pl. Br. at 13.) Lastly, Plaintiff maintains that the ALJ's conclusion is not supported by substantial evidence because of "repeated notations that Plaintiff had an abnormal mood or affect along with difficulty handling stress."  (*Id.* at 12–13.)

"[T]he step-two inquiry is a de minimis screening device [used] to dispose of groundless claims."  *Smolen v. Chater*,  80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)).  At step two, the ALJ first determines whether a claimant has shown the existence of a medically determinable physical or mental impairment(s) through "objective medical evidence from an acceptable medical source." 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521.  A "statement of symptoms, a diagnosis, or a medical opinion [is not sufficient] to establish the existence of an impairment(s)."  *Id.* C.F.R. § 404.1521.  Next, the ALJ determines whether the impairment is "severe," *i.e.*, whether it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  *Id.* § 404.1520(c).  The ALJ determines the severity of a mental impairment by assessing and rating the degree of limitation it causes in four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  *Id.* § 404.1520a(c)(3).  The degree of limitation is rated as none, mild, moderate, marked, or extreme.  *Id.* § 404.1520a(c)(4).  A mental impairment is "severe" if it causes more than a "mild" limitation in a functional area.  *Id.* § 404.1520a(d)(1).

**1.   Medical opinions assessing more than mild limitations were**

1    **properly rejected.**

2          An ALJ is required to evaluate and weigh every medical opinion in the record. 20

3    C.F.R. § 404.1527(c).  Generally, opinions of treating sources are entitled to the greatest

4    weight; opinions of examining, non-treating sources are entitled to lesser weight; and

5    opinions of non-examining, non-treating sources are entitled to the least weight.  *Garrison*

6    *v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  "To reject [the] uncontradicted opinion of

7    a treating or examining doctor, an ALJ must state clear and convincing reasons that are

8    supported by substantial evidence."  *Trevizo*, 871 F.3d at 675.  "The ALJ can meet this

9    burden by setting out a detailed and thorough summary of the facts and conflicting clinical

10   evidence, stating his [or her] interpretation thereof, and making findings."  *Id.*   In

11   evaluating any medical opinion, the ALJ may consider: (1) whether the source examined

12   the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3)

13   the degree of support the opinion has, particularly from objective medical evidence; (4) the

14   consistency of the opinion with the record as a whole; (5) the source's specialization; and

15   (6) "other factors."  20 C.F.R. § 404.1527(c); *Trevizo*, 871 F.3d at 675.

16         Here, the ALJ gave "partial weight" to the opinions of Dr. Littlefield, Dr. Rabara,

17   and the non-examining State agency psychologists.  (R. at 19.)  The Court finds no harmful

18   error in the ALJ's evaluation of these opinions and rejection of limitations therein.

19         Dr. Littlefield examined Plaintiff in July 2016.[3]  (*Id.* at 678–84.)  He noted that

20   Plaintiff greeted him appropriately with a handshake, spoke with normal speech, and

21   appeared to have good judgment.  (*Id.* at 678.)  He further noted that Plaintiff was "friendly

22   but appeared evasive in questions," noting Plaintiff's statement that he was "frustrated

23   because it was difficult for him to describe his symptoms or provide specifics of his daily

24   activities."  (*Id.*)  Dr. Littlefield also noted Plaintiff's reports of "difficulty when he was

25   working due to irritability that caused him to be confrontational with customers and led to

26   him being reprimanded by his employer" and that he "continues to be irritable with the

27   ───────────────
     [3]      As previously noted, the ALJ ordered more recent consultative examinations at
28   Plaintiff's June 2018 hearing since the ones in the record at that time, which included Dr.
     Littlefield's July 2016 examination, were nearly two years old.  (R. at 89–92.)

general public and with his family." (*Id.* at 679.)  Dr. Littlefield opined that Plaintiff had no limitations in understanding and memory, sustained concentration and persistence, and adapting to change.  (*Id.* at 682–83.)  However, he opined that Plaintiff had limitations in social interaction such that he "may need supervision and support to interact appropriately with the general public in a customer service setting" and "may have difficulty consistently responding appropriately to criticism from supervisors due to irritability." (*Id.*)  However, Dr. Littlefield simultaneously noted that Plaintiff appeared to be able to ask simple questions, get along with coworkers, and maintain appropriate hygiene.  (*Id.* at 683.)  Upon their review of the record, the State agency psychologists similarly opined that Plaintiff had "moderate" difficulties in social functioning.  (*Id.* at 106, 123.)

The ALJ's discount of these opinions was proper and supported by substantial evidence.  Specifically, the ALJ found the social interaction limitation was "not supported by the record," noting "numerous observations of other treating and examining professionals, who failed to note of anxious affect and instead found [Plaintiff] to be pleasant with normal behavior and affect."  (*Id.* at 19; *see id.* at 18, 678, 803, 806, 840, 953, 983.)  The ALJ also noted that Plaintiff "denied irritability to treating providers." (*Id.*; *see id.* at 18, 932, 936, 938, 942.)  Moreover, given their status as non-treating, non-examining sources, the reviewing State agency psychologists opinions were not entitled to any significant weight.  *See Garrison*, 759 F.3d at 1012.

Dr. Rabara examined Plaintiff in July 2018.  (*Id.* at 980–87.)  Dr. Rabara noted Plaintiff's description of symptoms related to his depression, including difficulty getting out of bed and feelings of guilt and worthiness from not working.  (*Id.* at 981.)  Plaintiff further reported that his psychotropic medications, prescribed by his PCP, were "starting not to work." (*Id.*)  Plaintiff also described problems with his memory. (*Id.*)  Dr. Rabara observed that Plaintiff's affect was "sad, but stable" and his thought processes were "logical and goal directed." (*Id.* at 982.)  He noted that Plaintiff was "polite, friendly, and engaging" and was "motivated, compliant, and persistent" during testing.  (*Id.* at 983.)  Dr. Rabara opined that Plaintiff had no limitations in his ability to understand, remember, and

carry out instructions based on his "superior" memory and thinking skills and noted that Plaintiff "greatly underestimate[d] his memory skills." (*Id.* at 985–86.) However, he opined that Plaintiff had various limitations in his ability to interact with others. (*Id.* at 985.) Specifically, Dr. Rabara opined that Plaintiff had "mild difficulty" in interacting appropriately with coworkers, supervisors, and the public and "moderate difficulty" in responding appropriately to usual work situations and to changes in routine work settings. (*Id.*)

The ALJ's discount of this opinion was proper and supported by substantial evidence. The ALJ found it was "vague" for lack of "vocationally specific terms." (*Id.* at 19.) Additionally, the ALJ noted that "it appear[ed] Dr. Rabara relied quite heavily upon [Plaintiff's] subjective complaints." (*Id.*) The ALJ noted that "[i]n contrast with this opinion, [the] mental status examination was unremarkable revealing [Plaintiff] was polite, friendly, engaging, alert, and oriented with casual dress, normal articulation, average energy, stressed mood, sad but stable affect, and logical thought process." (*Id.*; *see id.* at 18, 678, 983.)

### 2. Substantial evidence supports the ALJ's finding that Plaintiff had no more than mild mental limitations.

Because the ALJ properly rejected the above opinions, he did not err for failing to include limitations from them in the RFC assessment. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that an "ALJ was not required to incorporate evidence from the opinions of [the claimant's] treating physicians, which were permissibly discounted"). Moreover, the ALJ did not err in failing to find Plaintiff's mental impairment severe based on Dr. Bisla's diagnosis of dysthymic disorder as the regulations specifically provide that a diagnosis is insufficient to establish the existence a medically determinable impairment, much less a "severe" one. *See* 20 C.F.R. § 404.1521; *see also Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability."). Lastly, the ALJ's discussion of evidence of greater social functioning provides support for the conclusion that he has only mild

limitations in the four areas of social functioning.  Specifically, the ALJ noted Plaintiff's ability to perform routine activities of daily living independently, attend weekly church services, take his children to activities, and spend time with his friends twice a month.  (*Id.* at 18.)  Additionally, the ALJ noted that mental status examinations were "unremarkable" and that providers observed that Plaintiff "appeared pleasant, comfortable, calm, and relaxed with normal mood, affect, and behavior" and was "friendly, polite, and engaging." (*Id.*; *see id.* at 678, 803, 806, 840, 953, 983.)  Of particular significance is that Plaintiff denied irritability on several occasions.  (*Id.*; *see id.* at 932, 936, 938, 942.)  Lastly, the ALJ noted that while Plaintiff was intermittently prescribed an anti-depressant, he had never been psychiatrically hospitalized or participated in intensive outpatient, partial hospitalization, or residential treatment programs.  (*Id.* at 19.)  Thus, substantial evidence in the record supports the ALJ's findings and conclusions and the proper rejection of more severe limitations assessed by psychologists.

**B.   The ALJ Properly Evaluated The Opinion Of Dr. Briggs Because Any Error Was Harmless.**

Plaintiff's next allegation of error is that the RFC assessment is not supported by substantial evidence because the ALJ failed to properly weigh the opinion of consultative examiner, Dr. Brian Briggs.  (Pl. Br. at 13–17; *see* R. at 23–24.)  Plaintiff maintains that the ALJ "mischaracteriz[ed] his report" and improperly "rel[ied] on an opinion that was inconsistent with the evidence of record."  (Pl. Br. at 14.)

The determination of a claimant's RFC is an administrative finding reserved to the Commissioner that is based on "all of the relevant medical and other evidence," including medical opinion evidence.  20 C.F.R. §§ 404.1527(d), 404.1545(a)(3), 404.1513(a)(2).  As previously discussed, an ALJ is required to evaluate and weigh every medical opinion in the record.  *Id.* § 404.1527(c).  Generally, opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight. *Garrison*, 759 F.3d at 1012.  "If a treating or examining doctor's opinion is contradicted

by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* An ALJ satisfies the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting evidence, stating his [or her] interpretation thereof, and making findings." *Id.* In evaluating any medical opinion, the ALJ may consider: (1) whether the source examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the source's specialization; and (6) "other factors."  20 C.F.R. § 404.1527(c); *Trevizo*, 871 F.3d at 675.

Dr. Briggs examined Plaintiff in July 2016.[4]  (R. at 670–76.)  Following his examination, he opined that Plaintiff was limited to less than 2 hours of standing and/or walking and less than 6 hours of sitting in an 8-hour workday.  (*Id.* at 675.)  The ALJ gave these opinions "little weight," finding that they were "not supported by the evidence of record, including [Dr. Briggs'] own observations and findings."  (*Id.* at 23.)  In support, the ALJ noted that Plaintiff "appeared well developed and nourished with good cooperation" and exhibited "full strength of the bilateral upper and lower extremities, full range of motion of all major joints, and negative straight leg raise."  (*Id.* at 23–24.)  Though the ALJ also noted that Plaintiff exhibited "reduced grip strength and left hand function with altered sensation in the left C6-7 distribution, along with reduced spinal range of motion."  (*Id.* at 24.)  The ALJ concluded that there was "no support" for the sitting, standing, and walking limitations, specifically, and noted that Dr. Briggs failed to provide an explanation of the evidence relied upon in concluding the existence of such limitations. Lastly, the ALJ noted that it "appear[ed]" that Dr. Briggs reviewed only a "minimal amount of treatment notes" and was "not privy to more recent medical evidence," which purportedly showed "greater functioning."  (*Id.*)

The Court finds error. Contrary to the ALJ's assertion, Dr. Briggs provided an

---

[4]    As previously noted, the ALJ had ordered more recent consultative examinations at Plaintiff's June 2018 hearing since the ones in the record at that time, which included Dr. Briggs' July 2016 examination, were nearly two years old.  (R. at 89–92.)

1   adequate explanation for the standing/walking limitations.  Specifically, Dr. Briggs' wrote,

2   "This conclusion is based upon the chronic upper, lower back and neck pain, the residual

3   left knee pain, the chronic headaches, lumbar radiculopathy, and an antalgic, unstable,

4   unsafe gait."  (*Id.* at 675.)  Moreover, the opinions and this explanation both have support

5   from the findings on examination, specifically where Dr. Briggs noted an antalgic gait and

6   lumbar radiculopathy.  (*Id.* at 671–72.)  His sitting limitation, likewise, is accompanied by

7   an adequate explanation and supported by Dr. Briggs' findings.  (*Id.* at 675.)  Therefore,

8   the ALJ erred in finding that Dr. Briggs' opinion lacked clinical support and explanation

9   from his own examination.  As such, these were not legitimate reasons to discredit it.

10         However, the ALJ also discredited Dr. Briggs' opinion on account that it was

11   inconsistent with later medical evidence showing "greater functioning." (*Id.* at 24.)  Unlike

12   the above, this reason *is* legitimate.  Preceding the ALJ's evaluation of the opinion evidence

13   is the ALJ's evaluation of the medical evidence, which includes objective findings from

14   MRIs and X-rays as well as treatment notes from Plaintiff's various providers.  (*Id.* at 21–

15   22.)  The ALJ concluded that this evidence "demonstrat[ed] overall improvement of

16   [Plaintiff's] symptoms with appropriate care."  (*Id.* at 22.)  Contrary to Plaintiff's assertion,

17   this finding is supported by substantial evidence and was a specific and legitimate reason

18   to discredit Dr. Briggs' opinion.  (*See* Pl. Br. at 16.)

19         Specifically, the ALJ noted that Plaintiff underwent a left knee arthroscopy in March

20   2017 and a right shoulder arthroscopy in May 2017.  (R. at 22, 771–72, 769–70.)  Following

21   these surgeries, Plaintiff made "no complaints of any abnormalities . . . other than shoulder

22   pain in September 2017 immediately after going deep sea fishing and catching nearly 30

23   fish."  (*Id.* at 22; *see id.* at 755, 742, 738, 734, 722, 718.)  His surgeon believed that this

24   "new onset pain [was] due to overuse from the fishing trip."  (*Id.* at 725.)  Nonetheless, the

25   surgeon "felt he was doing well post-operatively and recommended he continue the

26   customary post-surgical physical therapy."  (*Id.* at 22; *see id.* at 737, 758, 741, 729.)

27   However, in April 2018, Plaintiff complained of left knee pain.  (*Id.* at 925.)  His surgeon

28   administered a 40-milligram Kenalog injection, and Plaintiff reported improvement of his

symptoms at the next visit a month later.  (*Id.* at 22, 928, 920.)  The ALJ noted that in March 2018, Plaintiff underwent surgery to repair a ligament in his right wrist.  (*Id.* at 22, 945–47.)  Following the procedure, Plaintiff reported "doing well" and denied any problems.  (*Id.* at 22, 941.)  His surgeon noted that he had "significant improvement in primary preop symptoms."  (*Id.* at 941.)  However, Plaintiff did have some pain and discomfort relating to the inserted hardware, but reported "doing well" and no problems after its removal.  (*Id.* at 22, 939, 931.)  The ALJ also noted that Plaintiff received cervical, thoracic, and lumbar medial branch blocks; radiofrequency ablation; and lumbar transforaminal epidural steroid injections for his pain.  (*Id.* at 22.)  Injections, in particular, provided 80% relief of pain.  (*Id.* at 22, 693, 689, 961, 1006.)  "Prescription medications, such as muscle relaxers, [also] offered intermittent improvement of pain" and without side effects.  (*Id.* at 22; *see id.* at 569, 558–59, 693, 894.)  Additionally, the ALJ noted that Plaintiff ambulated with regular gait, denied problems with his gait, and did not use an assistive device.  (*Id.* at 22, 747, 738, 734, 726, 730, 722, 718, 971, 940, 938, 692, 900, 889, 959, 990.)  Lastly, the ALJ noted Plaintiff's denial of balance difficulties, dizziness, tingling/numbness, joint stiffness, and calf pain when walking to his treating providers.  (*Id.* at 22 (citing records).)

Upon review of this evidence and the record as a whole, the Court finds the ALJ's finding that Plaintiff's conditions improved with appropriate care supported by substantial evidence.  As such, Dr. Briggs' July 2016 opinion was properly discredited on account that it was not consistent with this later evidence.  Therefore, the Court finds no reversible error in the ALJ's evaluation of Dr. Briggs' opinion given that the ALJ proffered at least one specific and legitimate reason supported by substantial evidence for discrediting it, notwithstanding the illegitimacy of some of the reasons which, in light of the foregoing, are harmless errors.  *See Treichler*, 775 F.3d at 1099; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (holding that ALJ's reliance on invalid reasons to discredit claimant's testimony constituted harmless error where ALJ had also relied on valid reasons).

**C.      The ALJ Properly Relied Upon The Opinion Of Dr. Hunter.**

Plaintiff's final allegation of error is that the ALJ improperly relied upon the opinion of consultative examiner, Dr. Gregory Hunter, who examined Plaintiff in July 2018–two years after Dr. Briggs.  (Pl. Br. at 16–17; *see* R. at 968–78.)  The ALJ gave Dr. Hunter's opinion "great weight" and effectively adopted it wholesale in the RFC, in part, because it was "consistent with . . . the medical evidence as a whole." (R. at 23.)  Plaintiff, however, asserts that Dr. Hunter's opinion was "actually inconsistent with the entirety of the record." (Pl. Br. at 17.)  He also suggests that Dr. Hunter may not have adequate knowledge of his "orthopedic-based impairments," given that Dr. Hunter's specialty is in neurology.  (*Id.*)  Thus, Plaintiff maintains that "the ALJ's reliance on this opinion by granting it great weight is unsupported by substantial evidence." (*Id.*)

The Court disagrees.  As previously discussed, the ALJ properly found that the medical evidence showed improvement of Plaintiff's pain and symptoms following surgeries and treatment.  As such, the ALJ did not err in concluding that Dr. Hunter's opinion was supported by and consistent with this evidence and the record as a whole.  While a physician's specialization is one factor that the ALJ may consider in evaluating a medical opinion, the opinion's consistency with the record as a whole and supportability are also relevant factors.  Thus, albeit Dr. Hunter's specialty is in neurology (a field which, arguably, may bear only a tangential relation to Plaintiff's impairments), his opinion was nevertheless properly weighed based on its consistency with and supportability from substantial evidence in the record.  Accordingly, the Court finds no error here.

**IT IS THEREFORE ORDERED**, affirming the decision of the Commissioner.

**IT IS FURTHER ORDERED**, directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 24th day of September, 2020.

Honorable John Z. Boyle
United States Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28